IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 18, 2003 Session

## VANCE E. SHELTON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Greene County**
**No. 01CR130    James E. Beckner, Judge**

**No. E2002-01437-CCA-R3-PC**
**July 31, 2003**

The Appellant, Vance E. Shelton, appeals the dismissal of his petition for post-conviction relief by the Greene County Criminal Court. In 1996, Shelton was convicted of one count of rape of a child and one court of aggravated sexual battery. Shelton collaterally attacks these convictions arguing that he received ineffective assistance of counsel, which resulted in prejudice to his defense. After review, we conclude that Shelton was denied his right to the effective assistance of counsel, as guaranteed by the Sixth Amendment, with respect to his conviction for aggravated sexual battery. With regard to his conviction for rape of a child, we conclude no relief is warranted. Accordingly, Shelton's conviction and sentence for aggravated sexual battery is vacated and remanded for a new trial.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed in Part; Reversed, Conviction Vacated, Remanded for new Trial in Part.**

DAVID G. HAYES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

J. Russell Pryor, Greeneville, Tennessee, for the Appellant, Vance E. Shelton.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Thomas E. Williams, III, Assistant Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

The Appellant was indicted on three counts of rape of a child. On October 3, 1996, a Greene County jury found the Appellant guilty of one count as charged, not guilty of a second, and guilty

of the lesser-included offense of aggravated sexual battery in the third count. He was sentenced to an effective sentence of thirty-seven years in the Department of Correction.[1]

Following a delayed appeal, a panel of this court affirmed the convictions and sentences, after modification of the Appellant's release eligibility date for the aggravated sexual battery conviction. *State v. Vance Shelton*, No. E2000-01632-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Dec. 20, 2000). This court's opinion recites the following facts:

> The state's proof revealed that friends of the eleven-year-old victim reported to the victim's teachers and school officials that the victim might be pregnant. The victim was them interviewed by school officials and a representative from the Department of Human Services. She told authorities about her sexual activities with the defendant.
>
> Defendant was the victim's cousin and resided in the same house from time to time. During the investigation, the defendant gave a tape recorded statement to authorities in which he denied any sexual contact with the victim.
>
> The victim testified that the defendant had digitally penetrated her vagina in the summer of 1995 in the hallway of her mother's home. Additionally, she testified that between Thanksgiving and Christmas of 1995, she performed oral sex on the defendant in the bathroom at the apartment of Randall McGee. Finally, she testified that on January 9, 1996, she again performed oral sex on the defendant in his bedroom and that once the act was complete, the defendant asked her if she wanted to have intercourse with him. When she told him she did not want to have intercourse, the victim testified that the defendant grabbed her by the shorts, pushed her onto the bed, moved her shorts to the side, and then vaginally penetrated her with his penis.
>
> Dr. Peter R. Reardon testified that his findings in the gynecological exam of the victim were consistent with vaginal/penile penetration.
>
> The victim's mother testified that she repeatedly warned the defendant that he should not be alone with the victim. The victim's eight-year-old step-sister testified that she saw the victim and the defendant alone in the defendant's bedroom on January 9, 1996.

---

[1]The Appellant's sentence is composed of consecutive sentences of twenty-five years for rape of a child and twelve years for aggravated sexual battery. Additionally, these sentences were ordered to be served consecutively to the Appellant's probated sentences for three counts of arson, which were revoked following his convictions for the current offenses.

Thereafter, the defendant presented testimony from Randall McGee concerning the alleged incident between Thanksgiving and Christmas in 1995 in McGee's apartment. McGee testified that the victim and the defendant were never alone on the night in question. As to the alleged incident on January 9, 1996, defendant's father testified that he never witnessed the victim and the defendant alone in the defendant's bedroom. The defendant did not testify at trial.

On August 10, 2001, the Appellant filed a *pro se* petition for post-conviction relief alleging numerous factual grounds for ineffective assistance of counsel. After conducting a thorough evidentiary hearing, the post-conviction court denied the relief sought.

**Analysis**

On appeal, the Appellant asserts that the quality of representation provided by his trial counsel fell below the required standard. Specifically, he alleges ineffective representation upon the following grounds:

1. Failure to sufficiently interview the witnesses called at trial;
2. Failure to interview and subpoena a key witness to testify;
3. Pursuing a legally invalid consent defense to the charge of rape of a child;
4. Failure to properly object to highly damaging and inadmissable hearsay statements by State's witnesses and soliciting inadmissible hearsay statements from defense witnesses;
5. Failure to argue the inadmissibility of the Appellant's prior convictions and the subsequent failure to preserve the issue for appeal; and
6. Failure to pursue a direct appeal for more than four years.

The Appellant also asserts that consideration should be given in light of the fact that the victim has recanted her testimony and that credibility issues should be resolved in the Appellant's favor.

To succeed on a challenge of ineffective assistance of counsel, the Appellant must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the Appellant must establish (1) deficient representation and (2) prejudice resulting from the deficiency. The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, technical decision made during the course of the proceeding. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel is dependant upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "[A] trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). However, *conclusions of law* are reviewed under a purely *de novo* standard, with no presumption that the post-conviction court's findings are correct.

## 1. Sufficiency of witness interviews

As his first assertion of ineffective assistance of counsel, the Appellant argues that trial counsel failed to sufficiently interview the witnesses which were called to testify at his trial. The proof established that trial counsel did not interview the victim and only spoke with four of the nine defense witnesses immediately prior to their taking the stand. In addition, one witness was only interviewed by trial counsel the day prior to trial. The assistant district attorney general who prosecuted the case testified that he would likely be fired for such an omission.

While we agree that failure to interview witnesses can certainly result in ineffective assistance of counsel, we also agree with the post-conviction court that the Appellant has failed to establish that the defense was prejudiced from such omission in this case. At the hearing, trial counsel testified that he could not "remember whether [he] talked to the victim or not." Nonetheless, we note that the victim, under usual circumstances, is not obligated to cooperate with defense counsel. *State v. Danyelle Dewain Parker*, No. M20002-01172-CCA-R3-PC (Tenn. Crim. App. at Nashville, Apr. 30, 2003). Moreover, in the present case, the Appellant failed to introduce any evidence as to how a witness' testimony would have been different had trial counsel interviewed them sooner. Neither the trial court nor this court can speculate on what a witness' testimony might have been. This issue is without merit.

## 2. Failure to interview and subpoena a key witness

The Appellant asserts that trial counsel's failure to locate and subpoena Stephanie Fann Chrisman to testify at trial resulted in ineffective assistance of counsel. At the post-conviction hearing, Mrs. Chrisman testified that on the occasion which resulted in the Appellant's conviction for aggravated sexual battery, she was present at the pool and no sexual contact occurred between the Appellant and the victim A.S.[2]

---

[2] In order to protect the identity of minor victims of sexual abuse, it is the policy of this court to refer to the victims by the initials. *State v. Schimpf*, 782 S.W.2d 186, 188 n.1(Tenn. Crim. App. 1989).

Mrs. Chrisman testified as follows:

Q.      Okay. And you understand that Andrea Shelton described a day when you were at Joe Shelton's house with her and Vance?

A.      Yes. Yes, sir.

Q.      In your life, how many times have you been at Joe Shelton's house at Joe Shelton's pool with Vance Shelton and Andrea Shelton?

A.      One time.

Q.      You're certain of that?

A.      Of the pool, yes.

Q.      Okay. Was there ever a time on that day that you were at Joe Shelton's pool with Andrea and Vance, was there ever a time that those two could have been or were alone with each other?

A.      No, sir.

Q.      During that day was Vance always in your sight?

A.      Yes, sir. He stayed right there in the pool with me when she went into the house by herself.

Q.      Was there ever a time on that day, the one day that you were with them together at Mr. Shelton's pool, was there ever a time that Mr. Vance Shelton would have had an opportunity to do any sort of - - to commit any sort of sexual act with Andrea Shelton?

A.      No. Not at all. He's not the type of person for that.

During the Appellant's 1996 trial, the victim testified that on the date in question, she, along with the Appellant and Stephanie Fann, were the only persons present at the pool.[3] At the post-conviction hearing, trial counsel admitted that he never talked to Stephanie, or remembered hearing her name prior to trial because the Appellant did not provide her name to him as a potential witness. Although the Appellant admitted that he could not specifically recall suggesting to trial counsel that Stephanie "would be a good potential witness," he testified that the following pre-trial conversation occurred:

Q.      . . . Do you remember ever prior to your trial having a conversation with Mr. Woolsey or him ever talking to you or mentioned to you about Stephanie, at that time, Stephanie Fann?

A.      . . . We was in the detention center. And he was asking me about potential witnesses that had been brought up by Andrea Shelton in her statements, and Stephanie's name had come up during one of them along with a few other people.

_____

[3]The facts recite that this incident occurred "in the summer of 1995 in the hallway of her mother's home."

Q.  Okay.  And you realize that she, Mrs., at that time, Fann, was supposedly present on the day that the aggravated sexual battery happened.

A.  Yes, sir.

Q.  Was her testimony accurate on the events of that day?

A.  Yes, sir, as far as I can recollect.

The post-conviction court's ruling makes no finding on the question of whether trial counsel, through discovery, was or should have been aware of Mrs. Chrisman as a potential witness.[4]  The ruling with regard to prejudice addresses only those witnesses which actually testified at trial:

> As to the issue of failing to locate and interview witnesses, it is agreed that Mr. Woolsey talked to every witness that he was told was a potential witness in the case. Petitioner [sic] says that he was never told that Stephanie Fann Chrisman was a potential witness in the case.  If witnesses were called that had only been talked to or interviewed the day before trial, nothing has been shown today to indicate that those witnesses would have testified any differently than they did testify.

While it would appear that the Appellant did not identify Stephanie Fann Chrisman as a potential witness, the question remains as to whether trial counsel was deficient in failing to conduct a minimal investigation of the facts underlying the charge.  Counsel's duty to investigate derives from counsel's basic function, which is "to make the adversarial testing process work in the particular case." *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 2588 (1986).[5] Because that testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Id.*

We conclude that under the facts presented, trial counsel's failure to conduct a reasonable investigation constituted deficient performance.  Accordingly, we examine the question of prejudice.

---

[4]In its findings, the post-conviction court noted that "Rule 12 discovery was sought and obtained; Rule 16 discovery was sought and obtained" along with a bill of particulars .

[5]It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty.  The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities.  The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or his stated desire to plead guilty. STANDARDS RELATING TO THE PROSECUTION FUNCTION AND THE DEFENSE FUNCTION § 4.1 (ABA PROJECT ON STANDARDS FOR CRIMINAL JUSTICE, APPROVED DRAFT 1971).

That test being whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Specifically, we must determine whether, if trial counsel had interviewed Mrs. Fann, it is "reasonably likely" that her testimony would have caused a different result. *Id.* at 694, 2069. Based upon Fann's testimony, we conclude that a different result was likely. On that basis, we find the prejudice prong of the *Strickland* standard met.

### 3. Consent Defense

The Appellant asserts that trial counsel was ineffective for "seemingly pursuing" a defense based upon the fact that the victim consented to the sexual acts, which the Appellant alleges was, in essence, no defense at all. The Appellant points out that trial counsel repeatedly questioned defense witnesses as to whether the victim told them that she was a willingly participant in the activities. The Appellant argues that this line of questioning served to bolster the State's case and prejudice his defense because of the victim's continual reiteration that the acts had occurred. The bolstering was demonstrated by the fact that the prosecution chose not to cross-exam the witnesses. Additionally, the prosecutor testified that such questioning helped, rather than hurt, the State's case.

At the hearing, trial counsel testified that he never attempted to assert the defense of consent at trial; rather, he was simply attempting to demonstrate to the jury that the victim's statements to her friends were inconsistent and could not be believed. The post-conviction court found that raising the issue of consent during questioning of the various witnesses was a matter of trial strategy. In so concluding, the post-conviction court noted:

> The trial strategy, obviously, was two-fold: One, that the defendant didn't do it, and two, that you couldn't believe anything the victim said.

> I don't know what better defense strategy there could've been than that. The way that [trial counsel] sought tactically to develop that strategy was to show that the victim had made various conflicting statements to different people over a period of time and that you couldn't believe what she said on any one occasion because she said different things on other occasions.

The *Strickland* court instructed reviewing courts to be highly deferential to strategic decisions of attorneys. *Stickland,* 466 U.S. at 690, 104 S. Ct. at 2066. Moreover, we may not second-guess a reasonably based trial strategy. Because we are unable to conclude that trial counsel's line of questioning with regard to the victim's consent was not unreasonable, we find this issue is without merit.

## 4. Failure to Object to and Soliciting of Hearsay Testimony

The Appellant argues that his trial counsel was ineffective for failing to object to hearsay testimony from prosecution witnesses regarding the Appellant's unlawful sexual conduct toward the victim and, in addition, for soliciting hearsay testimony from defense witnesses he called. The trial transcript reveals that the victim's friends, her teacher, and her guidance counselor all testified that the victim had told them that she had sexual contact with the Appellant. At trial, counsel, at times, examined in depth the nature and extent of these undisputed hearsay statements of the victim.

The post-conviction court found that trial counsel's allowance and solicitation of hearsay testimony was a tactical decision, introduced in an effort to try and discredit the victim's testimony based on the various accounts she told different people.

Trial counsel was obviously aware of the risk of introducing the hearsay statements made by the victim that she and the Appellant had sexual contact. However, under the circumstances that existed in this case, counsel believed that the evidence would help the Appellant's defense by diminishing the victim's credibility in light of the various stories she told to different witnesses. Trial counsel's decision to use the statements as examples of the victim's inconsistencies was arguably a tactical one. We cannot conclude that such a tactic was unreasonable. As established above, trial counsel's actions were part of his overall strategy to defend the case. It is not our function to "second guess" tactical and strategic choices pertaining to defense matters or measure a defense attorney's representations by "20-20 hindsight" when deciding the effectiveness of trial counsel. *Hellard v. State*, 629 S.W.2d at 9. We find this issue without merit.

## 5. Prior Convictions

The Appellant also claims that trial counsel was ineffective for failing to properly argue against the admissibility of the Appellant's three prior convictions for arson and for failing to properly preserve the issue for appeal. As a result of these omissions, the Appellant asserts that he was denied the right to testify at trial and deny all allegations made against him.

The Appellant was convicted in 1993 for three counts of arson. Prior to trial, the trial court ruled that the convictions would be admissible for impeachment purposes, after concluding that the probative value outweighed any unfair prejudicial effect. The Appellant raised the issue of admissibility on direct appeal, and a panel of this court was unable to find reversible error because "the defendant voiced no objection and no argument at the pre-trial hearing with regard to the arson convictions, thereby waiving the issue." *Vance Shelton*, No. E2000-01632-CCA-R3-CD. Because of this default, the issue of the admissibility of the Appellant's arson convictions was again presented and fully developed at the post-conviction hearing.

After hearing the proof on this issue, the post-conviction court again found the arson convictions admissible for purposes of impeachment concluding, "there has been nothing presented in the record today that would show that decision was wrong or that any inclusion in the record that

was not made at that time would have changed the ruling of this court or the finding of the Court of Criminal Appeals in any way." We agree. Because no prejudice has been established, this issue is without merit.

## 6. Delay in Appeal

The Appellant also asserts that trial counsel was ineffective in that he failed to perfect a direct appeal in the Appellant's case for over four years and that this delay resulted in great prejudice to the Appellant. It is uncontested that trial counsel, neglected to perfect a direct appeal of the Appellant's convictions.[6]

The post-conviction court found that, "without question," trial counsel was deficient for his failure to perfect the appeal. However, the court found that the deficiency has been corrected and no proof of prejudice has been established. In so finding, the post-conviction court concluded:

> The fact that this court had to appoint another attorney to represent the petitioner on appeal could have prejudiced him; but, again, this court has carefully listened to the evidence presented today, and there has been no showing of prejudice, no explanation given why it would've been prejudicial, what happened that was prejudicial.

We agree. Again, finding no prejudice, this issue is without merit.

## Credibility

In addition to the above issues, the Appellant asserts that, in the performance of our review, the issue of credibility should be weighted in his favor because of various documented untruths authored by trial counsel during his representation of the Appellant and the alleged recantations by the victim after trial. A trial court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. *Henley*, 960 S.W.2d at 578. Questions concerning credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial court. *Id*. at 579. We will not reweigh or reevaluate the evidence or substitute our inferences for those drawn by the trial court. *Id*. Thus, we find the Appellant's argument that we should reweigh the issue of credibility misplaced, as we are without authority to change the standard of appellate review.

## CONCLUSION

Upon review of the entire record, we conclude that the proof preponderates against the post-conviction court's finding that the Appellant received the effective assistance of counsel with regard to his conviction for aggravated sexual battery. Based upon trial counsel's failure to conduct a

---

[6]Following a disciplinary hearing by the Board of Professional Responsibility, trial counsel received a public censure based upon his failure to take any action to perfect his client's appeal.

reasonable investigation of the facts underlying this charge and the prejudice resulting from this omission, the Appellant's conviction for aggravated sexual battery is reversed and remanded for a new trial. With respect to the Appellant's conviction for rape of a child, we find no error and affirm the post-conviction court's ruling in denying relief.

_____
DAVID G. HAYES, JUDGE